IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

RUSSELL FRANCIS HALEY                                    PLAINTIFF

v.                                          CIVIL NO. 1:23-cv-00228-BWR

FRANKLIN BREWER, et al.                                  DEFENDANTS

## ORDER GRANTING MOTION [38] FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Russell Francis Haley filed this lawsuit under 42 U.S.C. § 1983 on September 7, 2023, while he was housed as an inmate at the George/Greene County Correctional Facility ("GGCCF") in Lucedale, Mississippi. Compl. [1] at 1-2. Plaintiff names Warden Franklin Brewer and Captain Eddie Rogers as Defendants in their individual and official capacities, *id.*, and he is proceeding *in forma pauperis*, Order [5]. His allegations were clarified at an Omnibus Hearing on May 17, 2024, and the Court has treated those allegations as a supplement to his Complaint.[1]

After a period of discovery, Defendants filed a Motion [38] for Summary Judgment on October 14, 2024. Plaintiff filed a summary-judgment response on November 21, 2024, and Defendants replied on December 9, 2024. Resp. [43]; Rep. [46]. The matter being fully briefed, and for the following reasons, the Court finds that Defendants' Motion [38] for Summary Judgment should be granted, that Plaintiff's claims against them should be dismissed with prejudice, and that this case

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

should be closed.  As discussed below, Plaintiff's pending Motion [47] to Reopen the Discovery Period and to Compel Defendants to Produce Discovery does not alter this result and will be denied.

## I. BACKGROUND

### A. Plaintiff's Allegations

The events giving rise to this lawsuit occurred while Plaintiff was housed at the Stone County Correctional Facility ("SCCF") in Wiggins, Mississippi, where Warden Brewer and Captain Rogers work.  Compl. [1] at 4.  He raises sixteen claims, which he testified can be distilled into three categories of constitutional violations: (1) deliberate indifference, (2) retaliation, and (3) denial of medical care.  Tr. [27] at 65-66.  The following is not an exhaustive list of Plaintiff's complaints; instead, he presents the Court with "just a few of [his] claims" to illustrate "a policy of deliberate indifference to health and safety issues."  Compl. [1] at 4.  Each claim is discussed separately below.

***One.***  Plaintiff testified that, on May 1, 2019, he twice "was assaulted by an inmate" for disobeying his "order to not use the telephone."  Tr. [27] at 9; *see also* Compl. [1-1] at 1.  When officers "came in [and] saw [Plaintiff] laying on the ground," they did not "punish" the assailant.  Tr. [27] at 9.  Instead, "they just asked him to apologize."  *Id*.  As a result of this incident, Plaintiff suffered "a sprained wrist," but he "didn't even go to medical over [it]."  *Id*. at 21.

***Two.***  On August 19, 2019, "an inmate started a false rumor that [Plaintiff] was locked up for raping little boys."  Tr. [27] at 9.  Plaintiff did not "want to get a reputation as a child molester in prison [because] it could be dangerous," so he "wrote

a letter on a kiosk to a friend of [his] in Atlanta." *Id.* Captain Rogers intercepted Plaintiff's message and "called [him] into his office for a meeting" to ensure Plaintiff that was he was "safe" at SCCF. *Id.* at 9-10. Plaintiff testified that Captain Rogers "coerced [him] into signing a statement" that he had been "mistaken" to send the letter by kiosk. *Id.* at 10. Plaintiff only suffered intangible effects of this incident, including "[f]ear from other inmates." *Id.* at 23.

**Three.** On September 23, 2019, Plaintiff "was shoved into a bathroom stall and . . . sustained a significant arm and shoulder injury." Tr. [27] at 13. Plaintiff clarified that this "significant . . . injury" consisted of "bruis[ing] from [his] elbow to [his] shoulder that lasted about a week, and just a little bit of pain and soreness." *Id.* at 13, 25. He "went to the medical department and two officers took [his] statement," but the assailant was never "even questioned." *Id.* at 13-14.

**Four.** Beginning in November 2019, Plaintiff testified that he "began receiving daily threats of violence from [his] rack partner," Derrick Brown, "who believed the rumors" about him being a child molester. Tr. [27] at 14, 27. By December 4, 2019, those threats of violence had "turned into a death threat," *id.* at 14, though Plaintiff conceded that Brown never "hit [him]," *id.* at 27. Rather, Brown "violently attacked another inmate on a different matter" around the same time, so Captain Rogers "move[d] [Plaintiff] into another zone." *Id.* at 14. Just as Plaintiff felt relief from these threats, Captain Rogers moved Brown "right straight into [Plaintiff's] new zone." *Id.* Plaintiff and Brown had no further "serious" interactions. *Id.* at 28.

**Five.**  Leading up to July 24, 2020, Plaintiff testified that "a new inmate took up the action" of "daily harassment" against him.  Tr. [27] at 15.  Plaintiff notified Captain Rogers about this problem, "but he again refused to do anything about it." *Id.*

**Six.**  On June 20, 2020, "in an attempt to have [him] moved completely out of the facility, four inmates filed a false report that [Plaintiff] was openly masturbating in the zone."  Tr. [27] at 15.  Plaintiff concedes that these reports were "investigated" and found to be "unsupported," but he was denied a "hearing with Warden Brewer, Captain Rogers and/or . . . Lieutenant Reynolds."  *Id.*  As a result, the rumor about his masturbation habits persisted.  *Id.*  Plaintiff "was not physically harmed" because of this issue, nor was adverse disciplinary action taken against him.  *Id.* at 31.

**Seven.**  On September 15, 2020, Plaintiff was treated for scabies—during which time his mattress was cleaned.  Tr. [27] at 15.  When Plaintiff "got out of the scabies treatment," he returned to discover that his mattress had been "given to another inmate."  *Id.* at 16.  Plaintiff complained to Captain Rogers and Lieutenant Reynolds about losing his mattress, but he was left to sleep "on a bare metal rack with a mattress pad" for eight days.  *Id.*  Because of this condition, Plaintiff suffered "the soreness that could be expected from a 70-year-old man, [but] nothing permanent."  *Id.* at 32.  The inmate who took Plaintiff's mattress "was never punished [or] . . . questioned, and he was allowed to keep [Plaintiff's] mattress."  *Id.* at 16.  Once Plaintiff "thought to write to the booking officer," "she immediately came down with

a new mattress for [him]." *Id.* at 33.  The booking officer "personally deliver[ed] [the new mattress] to [Plaintiff to] make sure it wasn't also stolen." Compl. [1-1] at 2.

**Eight.**  On November 6, 2020, Plaintiff claims that an inmate called "Big L . . . threatened to rape [Plaintiff]." Tr. [27] at 16.  "Because [Big L] was an admitted serial rapist, [Plaintiff] took this seriously and reported [it] to Captain Rogers." *Id.* Plaintiff was then "hauled into [L]ieutenant Peters' office for a meeting . . . only to be reprimanded and never given a chance to explain." *Id.*  Though "Big L was questioned," he denied Plaintiff's allegations. *Id.*  Plaintiff concedes that Big L never raped him or attempted to rape him, nor did he suffer any "physical harm" because of their interaction. *Id.* at 34-35.

**Nine.**  In February 2021, Plaintiff testified that "MDOC announced that tobacco sales and use would soon be allowed" in certain areas. Tr. [27] at 16.  After this announcement, Plaintiff claims that SCCF "lit up day and night," and "no one [was] . . . punished for smoking in a non-smoking area in that facility." *Id.* at 16-17. At this time, Plaintiff's "coughing spells began." *Id.* at 36.

**Ten.**  On February 28, 2021, Plaintiff claims that "an asthmatic inmate, William Humphrey, died in the zone." Tr. [27] at 17.  "Another inmate . . . got . . . upset [and] blamed the smokers in the zone for contributing to Humphrey's death." *Id.*  When Defendants learned of this altercation, "[t]hey moved [the inmate] into the throw-away zone, zone B, where the smoking is even worse." *Id.*  Plaintiff claims this action illustrates "the pattern of retaliation" and its "chilling effect" on prisoner

complaints about their conditions of confinement.  *Id.*  He does not claim to be injured because of this incident, as it did not involve him.  *Id.* at 37.

**Eleven.**  Plaintiff claims the "rampant smoking in the building caused [him] to suffer from an uncontrollable chronic cough, which in turn caused an abdominal hernia from which [he] still suffer[s]."  Tr. [27] at 17.  He concedes that "Dr. McCleave did her best to treat this," Compl. [1-1] at 4, and he was given "a hernia belt" and "prescribed cough drops that helped a little bit," Tr. [27] at 17.  But Defendants did not meaningfully address the root of the problem—the smoking.  *Id.*

**Twelve.**  On October 28, 2021, Plaintiff was told by a case manager "to write directly to Warden Brewer" about the problems he had experienced at SCCF.  Tr. [27] at 17.  He took this advice and wrote a letter to Warden Brewer on November 3, 2021, advising that Plaintiff "had been in contact with the Mississippi Coalition Against Sexual Assault."  *Id.* at 17-18.  Upon learning this information, Warden Brewer "threatened to expel [Plaintiff] from his facility," which Plaintiff takes as proof "that he was aware all along of all these underlying problems and did nothing about it."  *Id.* at 18.  Plaintiff believes that Warden Brewer's response "was clearly an attempt to stifle and chill any inmate reports of sexual harassment to outside agencies."  *Id.*

**Thirteen.**  On November 3, 2021, Plaintiff testified that he had a confrontational meeting with several officials at SCCF.  Tr. [27] at 18.  He was "informed by Captain Rogers that [Warden] Brewer had decided to move [him]."  *Id.* Plaintiff then "wrote a letter to Warden Brewer asking for a face-to-face meeting, which was . . . granted on November 5."  *Id.*

***Fourteen.***   The next day, on November 4, 2021, Plaintiff was "called into [the] office" again, Tr. [27] at 19, "for another round of ad hominem attacks," Compl. [1-1] at 4.   Officials and another inmate responsible for harassing Plaintiff "accus[ed] [Plaintiff] of being the cause of all the problems." Tr. [27] at 19.   During this meeting, Captain Rogers clarified to the other inmate "(and by extension, the whole prison population) that [Plaintiff] was not a child molester."   Compl. [1-1] at 5 (emphasis omitted).   Captain Rogers instructed "the [other] inmates . . . to back off on this." *Id.*

***Fifteen.***   During his November 5, 2021 meeting with Warden Brewer, Plaintiff "explained to the warden that [he] didn't believe [he was] in any immediate danger, and all [he] wanted was for [Warden Brewer] to take steps to make sure that it wouldn't progress to something dangerous."   Tr. [27] at 19.   After this meeting, Warden Brewer "decided not to expel [Plaintiff], at least for the time being."   *Id.* Thus, Plaintiff "suppose[s] [he] was helped" as a result of this meeting.  *Id.* at 46.

***Sixteen.***   On August 1, 2022, Plaintiff "wrote one more letter to [Warden] Brewer asking for him to get involved [in the smoking issue] because [Plaintiff's] bronchial problems were getting worse [and] much more frequent." Tr. [27] at 19.   In his letter, Plaintiff advised Warden Brewer that he had "video proof of inmates openly smoking five feet from his bed."   *Id.* at 19-20.   "Two days later, on August 3, 2022, [Plaintiff] was suddenly and without explanation moved to . . . George County."   *Id.* at 20.   Plaintiff believes this letter to Warden Brewer "was the last straw." *Id.* at 47.

* * *

Plaintiff seeks the following relief: "To return to Stone County with assurances that no further retaliation [will] take place, and compensatory damages for [his] kidney, [his] hernia, and any other compensatory damages, and [he has] asked for punitive damages against . . . [D]efendants." Tr. [27] at 53. Specifically, Plaintiff seeks $200,000.00 in compensatory damages related to his hernia, plus $250,000.00 in punitive damages." *Id.* at 54. Plaintiff assured the Court that he "fe[lt] safe" at SCCF, as it was "probably the safest place [he had] ever been." *Id.* at 53. Yet Plaintiff "want[ed] [Defendants] to do their job and make sure that it doesn't turn into something unsafe." *Id.*

Plaintiff is now housed at the Central Mississippi Correctional Facility in Pearl, Mississippi. Notice [50] at 1. Before his move, Plaintiff had "no serious issues with harassment" at GGCCF, "due to the exceptional professionalism of senior officers . . . [whose] no-nonsense approach tends to nip problems in the bud, oftentimes before they even occur." Resp. [7] at 3. Plaintiff's only complaints about his time at GGCCF were its greater distance from his home in Gulfport and the lack of opportunity for meaningful exercise. *Id.*

### B. Defendant's Summary Judgment Evidence

Defendants attached a copy of SCCF's "Grievance Procedure" to their Motion [38] for Summary Judgment. It requires inmates "to use the Administrative Remedy Procedure," or ARP, "before they . . . proceed with a suit in Federal and State Courts." Mot. [38-2] at 2. "Inmates are encouraged to seek solutions to their concerns through informal means, but in order to ensure their right to use the formal procedure, they

must make their request to the Facility Administrator within a 30-day period after an incident has occurred." *Id*.

The formal ARP at SCCF advises inmates to pursue three steps. *Id*. at 4-5. First, the inmate must write "a letter to the Legal Claims Adjudicator in which he briefly sets out the basis for his claim and the relief sought." *Id*. at 4. "Inmates should present as many facts as possible to answer all questions (who, what, when, where, how) concerning the incident." *Id*. at 2. "The Legal Claims Adjudicator's office will send notice to the offender via Form ARP-1 that his request is either being processed or is being rejected as per the screening policy." *Id*. at 4. "An inmate who is not satisfied with the results of his First Step attempt may request relief from the Facility Administrator by completing the Second Step section of Form ARP-1." *Id*. at 5. "An inmate who is dissatisfied with the Second Step review may appeal to the Commissioner or his designee." *Id*. "If the inmate is not satisfied with the Third Step response, he may seek judicial review within 30 days after receipt and signing for the decision." *Id*.

Defendants also attached Plaintiff's Grievance Record to their Motion [38] for Summary Judgment. On August 28, 2022, Plaintiff filed a grievance at GGCCF, advising that Defendants "instituted a policy of deliberate indifference to [his] reports of health and safety problems" at SCCF and that they engaged in "a campaign of reprisal and retaliation in response to [him] exercising [his] right to submit such reports." Mot. [38-3] at 4. To this grievance, Plaintiff attached a "short memo describing just a few of [his] oral and written complaints." *Id*. These complaints

included Defendants' failure to address the "false rumor" that Plaintiff "was locked up for raping little boys," "threats of violence and sexual assaults," Warden Brewer's adverse reaction to learning of Plaintiff's correspondence with the Mississippi Coalition Against Sexual Assault, and Plaintiff's health problems caused by secondhand smoke. *Id*. at 5-6 (quotation omitted). Plaintiff asked "to be immediately returned to [SCCF], with admonition that no further acts of retaliation [were] to be exacted against him." *Id*. at 4.

At the Second Step, Plaintiff was advised that he could be "considered for movement back to [SCCF] if the Warden request[ed] him in writing." *Id*. at 7. Since MDOC's ARP had "changed to a two-step program," Plaintiff was "eligible to seek judicial review" as of October 20, 2022. *Id*. at 9. Plaintiff objected to the decision of the ARP, arguing that it "fail[ed] to address the underlying issues or the remedies sought." *Id*. at 10. Specifically, Plaintiff had requested immediate return to SCCF, assurance that he would be free from "further retaliation," and correction of the underlying issues at SCCF. *Id*.

"[B]eing aggrieved by the decision of the Mississippi Department of Corrections Administrative Remedy Program," Plaintiff appealed its decision to the George County, Mississippi, Circuit Court. Mot. [38-3] at 13. The Circuit Court found "that the decision rendered by the ARP was not arbitrary or capricious, was supported by substantial evidence, was not beyond the powers of the ARP, and was not in violation of [Plaintiff's] rights." Mot. [38-4] at 2. Thus, the Circuit Court affirmed the decision of the ARP. *Id*.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id.* (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007)

(quotation and alterations omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id*. (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

## III. DISCUSSION

Plaintiff has presented the Court with "just a few of [his] claims" to illustrate the "policy of deliberate indifference to health and safety issues" at SCCF. Compl. [1] at 4. In other words, his sixteen claims do not represent an exhaustive list of the constitutional violations he believes he suffered at Defendants' hands. Yet the Court can consider only the claims before it. *See Amerson v. Pike Cnty., Miss.*, No. 3:09-cv-00053-DPJ-FKB, 2013 WL 53900, at *5 (S.D. Miss. Jan. 3, 2013) (noting that the Court must consider evidence against only the parties the plaintiff had "elected to sue," despite harboring reservations about dismissing his case altogether).

Plaintiff's claims numbered one and two are time-barred by the applicable statute of limitations. Plaintiff failed to properly exhaust his administrative remedies with respect to his claims numbered three through fifteen. His claim numbered sixteen survives these procedural hurdles, but it ultimately fails on the merits. Each of Plaintiff's sixteen claims must be dismissed with prejudice, and no additional discovery would alter this result.

**A. Each of Plaintiff's sixteen claims is legally insufficient and must be dismissed with prejudice.**

### i.    *Statute of Limitations – Claims 1 and 2*

"A district court may raise the defense of limitations *sua sponte* . . . and dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (quotation and brackets omitted). A complaint barred by the statute of limitations is properly dismissed as legally frivolous under 28 U.S.C. § 1915. *See Bates v. Price*, 368 F. App'x 594, 595 (5th Cir. 2010).

There is no federal statute of limitations for civil rights actions brought under § 1983. *Owens v. Okure*, 488 U.S. 235, 239 (1989). "Because § 1983 claims are best characterized as personal injury actions, [the Supreme Court has] held that a State's personal injury statute of limitations should be applied to all § 1983 claims." *Id.* at 240-41 (quotation omitted). "The applicable Mississippi statute of limitations period is three years." *Whittington v. City of McComb*, No. 5:15-cv-00052-DCB-MTP, 2016 WL 8223427, at *3 (S.D. Miss. Nov. 23, 2016) (citing MISS. CODE ANN. § 15-1-49).

While Mississippi law governs the applicable limitations period, federal law governs when a claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). An action accrues when a plaintiff has "a complete and present cause of action." *Id.* (quotation omitted). The limitations period begins to run when a plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) *see also Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008).

Under these principles, Plaintiff's first two claims accrued, respectively, on or about May 1, 2019, and August 19, 2019. Tr. [27] at 9. Given his allegations, there can be no dispute that Plaintiff knew of his alleged injuries by these dates. *See, e.g.*, *Perkins v. Lockhart*, No. 1:19-cv-00129-JCG, 2020 WL 5821973, at *3 (S.D. Miss. Sept. 30, 2020) (recognizing that a § 1983 claim predicated on an assault accrued on the date of the alleged assault); *Albino v. Municipality of Guayanilla*, 925 F. Supp. 2d 186, 196-97 (D.P.R. 2013) (recognizing that a § 1983 claim predicated on harassment accrued on the date of the alleged harassment). Thus, the periods for filing claims under § 1983 arising from these incidents expired, respectively, on or about May 1, 2022, and August 19, 2022.[2] Under the prison-mailbox rule, Plaintiff filed his Complaint on September 5, 2023, Compl. [1-3] at 1[3]—more than a year after these limitations periods expired. Plaintiff's claims numbered one and two are time-barred and must be dismissed with prejudice as legally frivolous under § 1915(e)(2)(B)(i).

---

[2] Plaintiff's claims numbered three through six would also be time-barred, but the limitations period was tolled while Plaintiff exhausted his administrative remedies. *See, e.g.*, *McKinney v. Williams*, 201 F. App'x 255, 256 (5th Cir. 2006); *Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999). Plaintiff initiated his sole administrative grievance on August 28, 2022, Mot. [38-3] at 4, about a month before the limitations period on his third claim expired. Even if the tolling period was complete on October 20, 2022, when Plaintiff "fulfilled the requirements of the ARP," *id.* at 9, the Court need not engage in complicated arithmetic since Plaintiff's claims numbered three through six are also unexhausted. *See infra* at 15-18.

[3] Pleadings submitted by *pro se* prisoners are considered filed when they are submitted to prison officials for delivery to the Court. *Cooper v. Brookshire*, 70 F.3d 377, 378-79 (5th Cir. 1995). District courts in this Circuit have used the date of the postmark on the envelope to apply this prison-mailbox rule. *See, e.g.*, *Redd v. Reeve*, No. 3:19-cv-00162-SEC-P, 2020 WL 833417, at *6 (W.D. La. Jan. 31, 2020), *report and recommendation adopted by* 2020 WL 837384, at *1 (W.D. La. Feb. 19, 2020); *Washington v. Cain*, No. 08-769-JVP-CN, 2009 WL 1916391, at *1 n.1 (M.D. La. July 1, 2009).

### ii.    *Exhaustion of Administrative Remedies – Claims 3-15*

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (quotation omitted). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).  Dismissal is mandatory where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint.  *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Evans v. Harrison Cnty. Adult Det. Ctr.*, No. 1:18-cv-00087-RHW, 2020 WL 980149, at \*1 (S.D. Miss. Feb. 28, 2020). "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act," or PLRA. *Id.* A properly exhausted claim has "complete[d] the administrative review process in accordance with the applicable procedural rules, *including deadlines*, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88 (emphasis added). Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

"The exhaustion requirement hinges on the availability of administrative remedies." *Pettis v. Hall*, No. 1:19-cv-00127-RPM, 2021 WL 785096, at \*1 (S.D Miss. Mar. 1, 2021) (quotations and brackets omitted). "An inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotations and brackets omitted).

The evidence before the Court reveals that administrative remedies were available to Plaintiff at SCCF long before he filed this lawsuit. Plaintiff testified that he had "access to a handbook," which "explain[ed] . . . how the grievance procedure works," and that it was "available to [him] in May of 2019," when the first of his

sixteen claims arose.  Tr. [27] at 22.  He also confirmed that he had "read [the grievance] procedure" was "familiar with [the grievance] procedure" at SCCF.  *Id.*

Yet the summary-judgment record shows that Plaintiff's sole administrative grievance was not timely filed with respect to his first fifteen claims.  The grievance procedure in effect at SCCF requires inmates to initiate the process "within a 30-day period after an incident has occurred."  Mot. [38-2] at 2.  His first fifteen claims had arisen by November 5, 2021, Tr. [27] at 9-19, but the only grievance documented in this record was filed on August 28, 2022, Mot. [38-3] at 4—more than nine months later.  "Plaintiff's grievance was untimely because it was not filed within 30 days of the [first fifteen] incident[s]."  *See Hobson v. Fisher*, No. 1:16-cv-00243-RHW, 2017 WL 1042081, at *2 (S.D. Miss. Mar. 17, 2017); *see also Harris v. Walker*, No. 5:04-cv-00098-JCS, 2006 WL 2669050, at *4 (S.D. Miss. Sept. 18, 2006).  His grievance being procedurally defective, Plaintiff "did not satisfy the exhaustion requirement," *see Hobson*, 2017 WL 1042081, at *2, and he has now "forfeited his opportunity to exhaust his claims," *Bridget v. Green*, No. 5:18-cv-00006-MTP, 2019 WL 4418809, at *7 (S.D. Miss. Sept. 16, 2019).

Plaintiff appears to argue that he could not timely exhaust his administrative remedies at SCCF because he was "booted . . . from [SCCF]" before he got the chance. Resp. [43] at 12.  But Plaintiff testified that he was transferred from SCCF on August 3, 2022, Tr. [27] at 20—well after his fifteenth claim arose on November 5, 2021, *id.* at 19.  There is no evidence that Plaintiff even initiated, much less completed, the administrative grievance process at SCCF during the intervening time.  Moreover,

according to Plaintiff's narrative, the alleged "campaign of reprisal and retaliation," Mot. [38-3] at 4, had been ongoing since May 2019, Tr. [27] at 9—giving him more than three years to initiate an administrative grievance at SCCF before he was transferred to GGCCF.  He failed to do so.

Plaintiff also argues that the George County, Mississippi, Circuit Court "soundly rejected" Defendants' timeliness argument.  Resp. [43] at 12.  But Defendants' argument to the Circuit Court was based on Plaintiff's alleged "failure to seek *judicial review* within thirty days," Mot. [38-4] at 1, not his failure to timely file an administrative grievance.  In other words, the Circuit Court rejected the argument that Plaintiff's appeal was untimely; it did not pass on the timeliness of Plaintiff's administrative grievance in the first place.

Accordingly, the Court finds that Plaintiff's claims numbered three through fifteen "should be dismissed . . . with prejudice because Plaintiff's failure cannot be cured."  *See Hobson*, 2017 WL 1042081, at *2 (citing *Johnson v. La. ex rel. La. Dep't of Pub. Safety and Corr.*, 468 F.3d 278, 280-81 (5th Cir. 2006) (affirming dismissal with prejudice of claims that were unexhausted because the grievance was not timely filed); *Trigg v. Wiginton*, No. 3:10-cv-01962-B-BN, 2014 WL 696444, at *3 (N.D. Tex. Feb. 24, 2014) (dismissing unexhausted claims with prejudice because the plaintiff's "failure cannot be cured as the time for administrative remedies has expired")).

### iii.    Claim Sixteen

On August 1, 2022, Plaintiff complained to Warden Brewer again about the smoking issue.  Tr. [27] at 19.  On August 3, 2022, he "was suddenly and without

explanation moved to . . . George County." *Id*. at 20. Plaintiff believes that his August 1 complaint "was the last straw" that prompted Warden Brewer to retaliate by transferring Plaintiff to GGCCF. *Id*. at 47. Insofar as Plaintiff's August 28, 2022 grievance mentions Defendants' "campaign of reprisal and retaliation," Mot. [38-3] at 4, the Court finds that Plaintiff has exhausted his administrative remedies with respect to this claim and will analyze it on the merits.

"To prevail on a claim of retaliation, a prisoner must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "This is a significant burden that requires the production of direct evidence of motivation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred." *McClure v. Turner*, 481 F. App'x 167, 172 (5th Cir. 2012) (quotation and ellipsis omitted). "Mere conclusory allegations of retaliation are insufficient." *Id*.

Retaliation claims in the prison context "must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation omitted). An inmate must allege more than his "personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quotation omitted). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). "An alleged retaliatory act that

fails to meet this standard is *de minimis* and will not satisfy the third element of a retaliation claim." *Zebrowski v. U.S. Bureau of Prisons*, No. 5:11-cv-00164-DPJ-FKB, 2013 WL 838009, at *3 (S.D. Miss. Mar. 6, 2013).

Assuming without deciding that Plaintiff can satisfy the first two elements, his retaliation claim based on his transfer to GGCCF fails because he cannot satisfy the third and fourth elements.  To start, Plaintiff has not alleged a "transfer to a more dangerous prison," which could support the third element of a retaliation claim.  *See Havens v. Mills*, No. 2:22-cv-00299, 2025 WL 2017208, at *9 (S.D. Tex. July 18, 2025). Rather, Plaintiff had "no serious issues with harassment" at GGCCF, "due to the exceptional professionalism of senior officers . . . [whose] no-nonsense approach tends to nip problems in the bud, oftentimes before they even occur." Resp. [7] at 3.  Thus, Plaintiff's transfer to GGCCF was *de minimis* and insufficient to deter the ordinary person from further exercise of his constitutional rights.  *See Morris*, 449 F.3d at 686. Both Plaintiff's administrative grievance and this lawsuit were filed during his time at GGCCF, proving the transfer did not in fact deter the pursuit of his constitutional rights.  *See McCullers v. Cox*, No. 3:10-cv-0130, 2010 WL 2076730, at *8 (W.D. La. Apr. 29, 2010) (rejecting retaliation claim based on transfer from one prison to another where the transfer "did not . . . discourage plaintiff from exercising his right to litigate his claims and otherwise complain about conditions of confinement"), *report and recommendation adopted by* 2010 WL 2076231, at *1 (W.D. La. May 24, 2010).

Without evidence that GGCCF "is in any way more violent than" SCCF, the transfer is not actionable "even if . . . it was motivated by an intent to retaliate." *See*

*Smith v. Hebert*, 533 F. App'x 479, 482 (5th Cir. 2013); *see Damond v. City of Rayville*, 127 F.4th 935, 941 (5th Cir. 2025) (affirming dismissal of retaliation claim where the plaintiff did "not allege that the prison to which he was transferred was more dangerous or otherwise inferior to" his prior facility).

Plaintiff has also failed to establish causation—or that "but for" the exercise of his constitutional rights, the retaliatory act would not have occurred. *See Murray v. Akal*, No. 20-cv-0792, 2020 WL 6240604, at *1 (W.D. La. Sept. 29, 2020), *report and recommendation adopted by* 2020 WL 6239708, at *1 (W.D. La. Oct. 22, 2020). Rather, Plaintiff's pleadings and testimony "establish a more plausible explanation for the transfer." *See id.* That is, Plaintiff voiced dissatisfaction with his conditions of confinement at SCCF; "[h]e complained about those conditions and was subsequently transferred to another facility." *See id.* And the alleged retaliation was more than three years in the making, since Plaintiff first voiced his displeasure with the conditions at SCCF in 2019. Tr. [27] at 9-10. This chronology does not support the inference that Plaintiff's transfer to GGCCF was caused purely by Warden Brewer's alleged retaliatory motive. *See Streater v. Davis*, No. 21-11253, 2022 WL 10362714, at *1 (5th Cir. Oct. 18, 2022) (finding the plaintiff had "failed to allege causation . . . because his transfer occurred four years after" the events he claimed motivated the retaliation).

The Court has found no constitutional violation, and Defendants are not liable on Plaintiff's retaliation claim in their individual or official capacities. *See Harris v. Pearl River Cnty., Miss.*, No. 1:23-cv-00230-HSO-BWR, 2024 WL 5397177, at *3 (S.D.

Miss. Dec. 20, 2024) ("No municipal liability exists without first showing a violation of constitutional rights."), *report and recommendation adopted by* 2025 WL 326066, at *1-3 (S.D. Miss. Jan. 29, 2025).  In the end, Plaintiff "has no justifiable expectation that he will be incarcerated in any particular prison within a State."  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).  Prison officials are given wide latitude in the daily operation of the correctional system, including inmate placement, and this Court is reluctant to interfere without a showing of patently unreasonable conduct. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979).  Plaintiff has made no such showing, and his only remaining claim will also be dismissed with prejudice.

### B. Plaintiff has failed to show good cause for delaying the final disposition of this case by reopening the discovery period.

After the Omnibus Hearing on May 17, 2024, the parties were granted until July 16, 2024, for the exchange of discovery and August 15, 2024, for the filing of dispositive motions.  Order [26] at 4.  During that time, the parties asked the Court to extend the discovery period, Mot. [30], and to compel discovery, Mot. [32]—pushing the deadline for the final exchange of discovery to September 30, 2024, (Text-Only Order, Sept. 23, 2024).[4]  Defendants filed their Motion [38] for Summary Judgment on October 14, 2024, Plaintiff responded on November 21, 2024, and Defendants replied on December 9, 2024.

---

[4] Following Plaintiff's Motion [32] to Compel Discovery, the Court ordered Defendants to "either respond to [Plaintiff's] Requests for Production of Documents or file a written response to his Motion [32] to Compel Discovery."  (Text-Only Order, Sept. 23, 2024). Defendants chose to respond to Plaintiff's Requests for Production of Documents, Notice [35], so the Court denied Plaintiff's Motion [32] to Compel Discovery as moot, (Text-Only Order, Oct. 2, 2024).

On December 27, 2024, about three months after the conclusion of discovery and more than two months after Defendants' Motion [38] for Summary Judgment was filed, Plaintiff moved to reopen the discovery period and to compel the production of additional discovery. Mot. [47] at 1-14. He argues that Defendants never fully answered his discovery requests, *id.* at 4, and that he could not adequately respond to their summary-judgment motion without additional discovery, *e.g.*, Resp. [43] at 8-9. Whether analyzed under Federal Rule of Civil Procedure 16(b)(4) or 56(d), Plaintiff's request fails. Given the overlap between the two Rules, the Court "will address [Plaintiff's request] under Rule 16(b)(4), picking up the Rule 56(d) issues along the way." *See Rich v. Sheppard*, No. 3:16-cv-00366-DPJ-LRA, 2018 WL 1720806, at *2 (S.D. Miss. Apr. 9, 2018).

### i.    *Applicable Standards*

"A schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "The good cause standard requires a showing by the movant that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021). "In determining whether Rule 16(b)(4)'s good cause standard has been met, courts consider four factors: (1) the explanation for the failure to meet the deadline; (2) the importance of the requested relief; (3) the potential prejudice in granting the relief sought; and (4) the availability of a continuance to cure such prejudice." *Knoth v. Apollo Endosurgery US, Inc.*, No. 5:18-cv-00049-DCB-MTP, 2021 WL 5098285, at *2 (S.D. Miss. Nov. 2, 2021).

And under Rule 56(d):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its [summary-judgment] opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

To obtain relief under Rule 56(d), Plaintiff must "show specified reasons [why he] cannot present facts essential to justify [his summary-judgment] opposition" and "how the additional discovery will defeat the summary judgment motion." *See Snow v. Vactor Manufacturing, Inc.*, No. 5:20-cv-00174-DCB-MTP, 2021 WL 2212715, at *2 (S.D. Miss. June 1, 2021). "[T]his showing may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 296 (5th Cir. 2014) (quotation and last brackets omitted). "Moreover, a party seeking relief under Rule 56(d) must also have 'diligently pursued discovery.'" *Carroll v. Fort James Corp.*, No. 1:04-cv-00003-HSO-JCG, 2020 WL 13490057, at *2 (S.D. Miss. Dec. 15, 2020) (quoting *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017)). "[T]he trial court need not aid non-movants who have occasioned their own predicament through sloth." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).

### ii.   *Analysis*

"Courts within the Fifth Circuit have described the explanation for needing more time as the most important factor" in the Rule 16(b)(4) analysis. *Ryan v. U.S. Dep't of Commerce*, 3:18-cv-00558-DPJ-FKB, 2021 WL 3134909, at *2 (S.D. Miss. July 23, 2021) (quotation and brackets omitted). Yet Plaintiff has not provided an

adequate explanation for his failure to pursue the requested relief before the discovery deadline expired. He blames Defendants' "dilatory actions" for his inability "to obtain adequate discovery materials," Mot. [47] at 3, but Plaintiff waited nearly three months after the discovery deadline expired to pursue available remedies— despite having filed a timely Motion [32] to Compel in the past. "[I]f the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril." *Wells v. Sears Roebuck and Co.*, 203 F.R.D. 240, 241 (S.D. Miss. 2001).

Insofar as the requested relief was available to Plaintiff earlier, he did not act with reasonable diligence by waiting several months to seek additional discovery. *See Vanderlan v. Jackson HMA, LLC*, No. 3:23-cv-00258-DPJ-ASH, 2024 WL 4374122, at *3 (S.D. Miss. Oct. 2, 2024) (denying motion to reopen discovery when the plaintiff failed to seek an extension "with the discovery deadline looming"); *Knoth*, 2021 WL 5098285, at *2 ("The good-cause standard will not be satisfied if . . . the party seeking relief . . . has not acted diligently in compliance with the schedule." (quotation and brackets omitted)).

The importance of the requested discovery is negligible. "In the Rule 56(d) context, [Plaintiff] . . . must provide a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Rich*, 2018 WL 1720806, at *3 (quotation and emphasis

omitted).  But nothing Defendants could provide would alter the Court's conclusion that Plaintiff's claims numbered one and two are time-barred.  Plaintiff tacitly admits that he filed only one administrative grievance on August 28, 2022, Resp. [43] at 12; he does not identify with particularity any other grievances that would change the Court's exhaustion analysis with respect to his claims numbered three through fifteen.  And he has failed to describe how any of the requested discovery bears on his final retaliation claim.  Plaintiff has already admitted that GGCCF provided a pleasant living environment, Resp. [7] at 3, and his litigation history proves that the offending transfer did not stifle the pursuit of his constitutional rights.  Additional discovery would not change these conclusions.

Finally, Defendants would be prejudiced by the reopening of discovery at this stage.  Their Motion [38] for Summary Judgment has been fully briefed for nine months.  Allowing discovery at this juncture might require supplemental briefing, which would take both parties time to complete, and it would needlessly advance the age of this case that has already been pending for almost two years.  *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 239 (5th Cir. 2015) (affirming refusal to allow amendment to scheduling order because it would require the court to reopen discovery and permit another round of dispositive motions).  Though "a continuance would allow time for these additional steps to occur," *see Rich*, 2018 WL 1720806, at *5, granting a continuance would delay the resolution of this case and add to Defendants' mounting expenses without deterring future dilatory behavior or serving to enforce the applicable procedural rules, *see Vanderlan*, 2024 WL 4374122, at *4.

"Failures to meet discovery deadlines increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution." *Garza v. Allstate Tex. Lloyd's Co.*, 284 F. App'x 110, 113 (5th Cir. 2008).

Additionally, Plaintiff has failed to support his Rule 56(d) request with "an affidavit or declaration," which alone justifies the denial of that request. *Leza v. City of Laredo*, 496 F. App'x 375, 377-78 (5th Cir. 2012). Plaintiff's Motion [47] to Reopen the Discovery Period and to Compel Discovery should be denied under Rules 16(b)(4) and 56(d).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [38] for Summary Judgment filed by Defendants Franklin Brewer and Eddie Rogers is **GRANTED**. Plaintiff Russell Francis Haley's claims against both Defendants are **DISMISSED WITH PREJUDICE**. A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff's Motion [47] to Reopen the Discovery Period and to Compel Discovery is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 1st day of August, 2025.

s/ *Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE